PAUL L. REIN, Esq. (SBN 43053)
JULIE OSTIL, Esq. (SBN 215202)
ANN WINTERMAN, Esq. (SBN 222257)
LAW OFFICES OF PAUL L. REIN
200 Lakeside Dr., Suite A
Oakland, CA 94612
(510) 832-5001

Attorneys for Plaintiff
ANDI MILLARD

JAMES HARTNETT, Esq. (SBN 84587)
HARTNETT, SMITH & ASSOCIATES
777 Marshall St.
Redwood City, CA 94063
(650) 568-2820

Attorney for Defendants
EUGENE AND BARBARA CASARETTO AS TRUSTEES OF THE CASARETTO TRUST

MANUEL RIVAS, JR., Esq. (SBN 161236)
FRIEDLAND, RIVAS & ASSOCIATES
225 Bush Street, 16th Floor
San Francisco, CA 94104
(415) 439-8874

Attorney for Defendants
CHINA CHEF RESTAURANT, JOHN TANG, HELEN TANG, AND ZHANG SIMING

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

ANDI MILLARD

Plaintiff,

v.

CHINA CHEF RESTAURANT; ANNA TIEN; HELEN PANT; JOHN TANG; ZHANG SIMING, dba CHINA CHEF RESTAURANT; EUGENE J. AND BARBARA CASARETTO TRUST; EUGENE CASARETTO and BARBARA CASARETTO, TRUSTEES of the EUGENE J. AND BARBARA CASARETTO TRUST; and DOES 1-10, inclusive,

Defendants.

CASE NO. C07-04602 JCS
Civil Rights

**CONSENT DECREE AND [PROPOSED] ORDER**

**CONSENT DECREE AND ORDER**

1. Plaintiff ANDI MILLARD, filed a Complaint in this action on September 5, 2007, to obtain recovery of damages for her discriminatory experiences, denial of access, and denial of her civil rights, and to enforce provisions of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., and California civil rights laws against Defendants, CHINA CHEF RESTAURANT; ANNA TIEN; HELEN PANT; JOHN TANG; ZHANG SIMING, dba CHINA CHEF RESTAURANT; EUGENE J. AND BARBARA CASARETTO TRUST; EUGENE CASARETTO and BARBARA CASARETTO, TRUSTEES of the EUGENE J. AND BARBARA CASARETTO TRUST; and DOES 1-10, inclusive, relating to the condition of their public accommodations as of Plaintiff's visit of April 20, 2007, and continuing. Plaintiff has alleged that Defendants violated Title III of the ADA and sections 51, 52, 54, 54.1, 54.3 and 55 of the California Civil Code, and sections 19955 *et seq.,* of the California Health and Safety Code by failing to provide full and equal access to their facilities at the China Chef Restaurant located at 676 El Camino Real, San Carlos, California ("the Property").

2. Defendants CHINA CHEF RESTAURANT; HELEN TANG; JOHN TANG; ZHANG SIMING, dba CHINA CHEF RESTAURANT; EUGENE J. AND BARBARA CASARETTO TRUST; EUGENE CASARETTO and BARBARA CASARETTO, TRUSTEES of the EUGENE J. AND BARBARA CASARETTO TRUST; and DOES 1-10, inclusive, deny the allegations in the Complaint and by entering into this Consent Decree and Order do not admit liability to any of the allegations in Plaintiff's Complaint filed in this action. The parties hereby enter into this Consent Decree and Order for the purpose of resolving this lawsuit without the need for protracted litigation, and without the admission of any liability.

**JURISDICTION:**

3. The parties to this Consent Decree agree that the Court has jurisdiction of this matter pursuant to 28 USC §1331 for alleged violations of the Americans with Disabilities Act of 1990, 42 USC 12101 *et seq.* and pursuant to supplemental jurisdiction for alleged violations

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

of California Health & Safety Code §19955 *et seq*., including §19959; Title 24 California Code of Regulations; and California Civil Code §§51; 52; 54; 54.1; 54.3; and 55.

4. In order to avoid the costs, expense, and uncertainty of protracted litigation, the parties to this Consent Decree agree to entry of this Order to resolve all claims regarding injunctive relief, damages, attorney fees, litigation expenses, and costs, raised in the Complaint filed with this Court. Accordingly, they agree to the entry of this Order without trial or further adjudication of any issues of fact or law concerning Plaintiff's claims for injunctive relief, damages, attorney fees, litigation expenses, and costs.

WHEREFORE, the parties to this Consent Decree hereby agree and stipulate to the Court's entry of this Consent Decree and Order, which provides as follows:

**SETTLEMENT OF INJUNCTIVE RELIEF**:

5. This Order shall be a full, complete, and final disposition and settlement of Plaintiff's claims against Defendants for injunctive relief that have arisen out of the subject Complaint. The parties agree that there has been no admission or finding of liability or violation of the ADA and/or California civil rights laws, and this Consent Decree and Order should not be construed as such.

6. Defendants have represented that Defendant China Chef has closed its business (until the business is sold or their term of lease ends, Defendant China Chef will use the premises for storage) and defendant Casaretto Trust intends to sell the building. Therefore, the Property will not be used as a public accommodation at this time. Defendants agree that prior to the Property ever being used as a public accommodation in the future, by any business other than China Chef, it will be brought into full compliance with all access codes including Title 24-2 and Americans with Disabilities Act Accessibility Guidelines or, as an alternative, it will be brought into compliance with the access improvements specified in Jonathan Adler's expert report (and as allowed in the DES Architects and Engineers Site Plan and Site Detail, dated March 24, 2008, attached to the Adler report), attached to this Consent Decree as Attachment A. If so, the Property will at least be made accessible, in regard to provision of accessible

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

**Consent Decree and [Proposed] Order:**
**Case No. CO7-04602 JCS**

3

s:\sb\china chef\chinachef\july7consentdecreechinachef(2).doc

entry, restroom, and parking. In the event Defendant China Chef (i.e. Helen Tang, John Tang, and Zhang Siming, dba China Chef Restaurant) never reopen the restaurant at the current location or their lease term ends, Defendant China Chef will not be required to perform and/or be liable for any and all fees and costs related to bringing the Property into compliance as required by this Consent Decree and related Order (i.e. the injunctive relief matters). Furthermore, should Defendant China Chef sell the subject business, the purchaser of said business shall only be required to make certain that the interior of the Property comes into compliance with the access requirements as provided in this Consent Decree for the Landlord will be responsible for making certain that the exterior of the Property will come into compliance with the access requirements of this Consent Decree. None of the agreements allocating responsibility between tenants and owners, as stated above, are intended to relieve any of the defendant parties from their joint responsibilities to the plaintiff, Andi Millard, or to her attorneys for injunctive relief, fees, litigation expenses, or costs.

7. If the property is re-opened and used as a public accommodation within the next eight (8) months, Defendants will submit plans for all corrective work to the appropriate governmental agencies within 30 days of reopening, will commence work within 30 days of receiving approval from the appropriate agencies, and will complete all work within 30 days of commencement. For work not requiring building permits, the work will be completed within 30 days of reopening. In the event that unforeseen difficulties prevent Defendants from completing any of the agreed-upon injunctive relief, Defendants or their counsel will notify Plaintiff's counsel in writing within 15 days of discovering the delay. Defendants or their counsel will notify Plaintiff's counsel when the corrective work is completed, and in any case will provide a status report no later than 120 days from the reopening of the property as a public accommodation. If the facility is reopened as a public accommodation after eight (8) months from the entry of this consent decree, it must be made accessible prior to opening.

**DAMAGES, ATTORNEY FEES, LITIGATION EXPENSES, AND COSTS:**

8. The parties have reached an agreement to pay plaintiff $10,000 damages,

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

payable to Paul Rein in trust for Andi Millard, and to do so on or before June 25, 2008, and have now reached an agreement regarding Plaintiff's claims for attorney fees, litigation expenses and costs. Defendants shall pay Plaintiff's attorney, Paul L. Rein, $40,000 on or before August 8, 2008.

**ENTIRE CONSENT ORDER**:

9. This Consent Decree and Order constitutes the entire agreement between the signing parties on all matters in this lawsuit, and no other statement, promise, or agreement, either written or oral, made by any of the parties or agents of any of the parties, that is not contained in this written Consent Decree and Order, shall be enforceable regarding all matters described herein.

**CONSENT ORDER BINDING ON PARTIES AND SUCCESSORS IN INTEREST**:

10. This Consent Decree and Order shall be binding on Plaintiff ANDI MILLARD; Defendants CHINA CHEF RESTAURANT; HELEN TANG; JOHN TANG; ZHANG SIMING, dba CHINA CHEF RESTAURANT; EUGENE J. AND BARBARA CASARETTO TRUST; EUGENE CASARETTO and BARBARA CASARETTO, TRUSTEES of the EUGENE J. AND BARBARA CASARETTO TRUST; and any successors in interest. The parties have a duty to so notify all such successors in interest of the existence and terms of this Consent Decree and Order during the period of the Court's jurisdiction of this Consent Decree and Order.

**MUTUAL RELEASE AND WAIVER OF CIVIL CODE SECTION 1542 AS TO INJUNCTIVE RELIEF ONLY:**

11. Each of the parties to this Consent Decree understands and agrees that there is a risk and possibility that, subsequent to the execution of this Consent Decree, any or all of them will incur, suffer, or experience some further loss or damage with respect to the Lawsuit which are unknown or unanticipated at the time this Consent Decree is signed. Except for all

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

obligations required in this Consent Decree, the parties intend that this Consent Decree apply to all such further loss with respect to the Lawsuit, except those caused by the parties subsequent to the execution of this Consent Decree. Therefore, except for all obligations required in this Consent Decree, this Consent Decree shall apply to and cover any and all claims, demands, actions and causes of action by the parties to this Consent Decree with respect to the Lawsuit, whether the same are known, unknown or hereafter discovered or ascertained, and the provisions of Section 1542 of the California Civil Code are hereby expressly waived. Section 1542 provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

12. Except for all obligations required in this Consent Decree, each of the parties to this Consent Decree, on behalf of each, their respective agents, representatives, predecessors, successors, heirs, partners and assigns, releases and forever discharges each other Party and all officers, directors, shareholders, subsidiaries, joint venturers, stockholders, partners, parent companies, employees, agents, attorneys, insurance carriers, heirs, predecessors, and representatives of each other Party, from all claims, demands, actions, and causes of action of whatever kind or nature, presently known or unknown, arising out of or in any way connected with the Lawsuit.

//

//

//

//

//

//

**TERM OF THE CONSENT DECREE AND ORDER**:

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

13. This Consent Decree and Order shall be in full force and effect for a period of twelve (12) months after the date of entry of this Consent Decree and Order, or until the injunctive relief contemplated by this Consent Decree and Order is completed, whichever occurs later. The Court shall retain jurisdiction of this action to enforce provisions of this Consent Decree and Order for twelve (12) months after the date of this Consent Decree, or until the injunctive relief contemplated by this Consent Decree and Order is completed, whichever occurs later.

**SEVERABILITY**:

14. If any term of this Consent Decree and Order is determined by any court to be unenforceable, the other terms of this Consent Decree and Order shall nonetheless remain in full force and effect.

**SIGNATORIES BIND PARTIES**:

15. Signatories on the behalf of the parties represent that they are authorized to bind the parties to this Consent Decree and Order. This Consent Decree and Order may be signed in counterparts and a facsimile signature shall have the same force and effect as an original signature.

//

Dated: July 13, 2008

Plaintiff ANDI MILLARD

Dated: July 8, 2008

Eugene J. Casaretto, Trustee

Defendant EUGENE AND BARBARA CASARETTO AS TRUSTEES OF THE CASARETTO TRUST

Dated: July , 2008

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

JUL-13-2008 01:41P FROM:ANDREA (352) 860-1445 TO:15108324787 P.1/1

Defendant CHINA CHEF RESTAURANT, JOHN TANG, HELEN TANG, AND ZHANG SIMING

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

Consent Decree and [Proposed] Order:
Case No. CO7-04602 JCS

8

c:\documents and settings\james hartnett\local settings\temporary internet files\olk23b\china chef july 7 consent decree china chef (2).doc

APPROVED AS TO FORM:

Dated: ~~June~~ July 9, 2008

PAUL L. REIN
JULIE A. OSTIL
ANN WINTERMAN
LAW OFFICES OF PAUL L. REIN

Attorneys for Plaintiff
ANDI MILLARD

Dated: ~~June~~ July 8, 2008

JAMES HARTNETT
HARTNETT, SMITH & ASSOCIATES

Attorney for Defendants EUGENE AND BARBARA CASARETTO AS TRUSTEES OF THE CASARETTO TRUST

Dated: ~~June~~ July 8, 2008

MANUEL RIVAS
FRIEDLAND, RIVAS & ASSOCIATES

Attorney for Defendants CHINA CHEF RESTAURANT, JOHN TANG, HELEN TANG, AND ZHANG SIMING

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

Consent Decree and [Proposed] Order:
Case No. CO7-04602 JCS

9

c:\documents and settings\james hartnett\local settings\temporary internet files\olk23b\china chef july 7 consent decree china chef (2).doc

## ORDER

Pursuant to stipulation, and for good cause shown, **IT IS SO ORDERED.**

Dated: ___________

Honorable Joseph C. Spero
United States District Judge

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

**Consent Decree and [Proposed] Order:**
**Case No. CO7-04602 JCS**

10

c:\documents and settings\james hartnett\local settings\temporary internet files\olk23b\china chef july 7 consent decree china chef (2).doc

# ATTACHMENT A

**China Chef Restaurant**
676 El Camino Real
San Carlos, CA

## Disabled Access Evaluation: Assessment of Architectural Barriers

Inspection Date: 12/14/07

Survey performed by: [signature]

Jonathan Adler, Principal
ACCESS COMPLIANCE SERVICES
ICBO Accessibility Inspector/Plans Examiner #0886919-21
CA Contractor Lic. #707965
(831) 429-4191

Part I: Basis For Identifying Inaccessible Features .......... 2
Part II. Basis For Determining The Requirement To Correct Inaccessible Features .......... 2
Part III: Summary Of Architectural Barriers .......... 4
Part IV: Detailed Inventory of Architectural Barriers .......... 5
Part V: Recommendations .......... 10

## Part I: Basis For Identifying Inaccessible Features

• ANSI A117.1-1961 ........................................................................(1970 to 1981)
American National Standards Institute standards for accessibility, as applied to public accommodations in California pursuant to Govt. Code 4450 and H&S Code 19955

• CA Code of Regulations, Title-24 Part 2, Volume 1 ................................ (1982 to present)
The California Building Code as applies to public accommodations, pursuant to CA Health & Safety Code 19955

• The Americans with Disabilities Act Title III–28 CFR Part 36, Appendix A. (1990 to present)
The Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities

## Part II. Basis For Determining The Requirement To Correct Inaccessible Features

**1. Violations:** Architectural features that failed to meet the applicable state or federal regulations when they were originally constructed are required to be corrected. This applies to:

a) Newly constructed facilities that were improperly built
b) Alterations to existing facilities that were improperly built, with or without a permit.
c) Path of Travel- Alterations in which an accessible path of travel was not properly provided to the altered area. Under California law since 1982, and under the ADA since 1990, the altered area was required to comply with disabled access standards in addition to another requirement that was also triggered, called _path of travel_.

*Path of travel* requires that the route to the altered area must be made accessible, which includes parking when it is provided, as well as exterior routes, an entrance, interior routes as needed, the restrooms that serve the altered area, and drinking fountains and telephones that serve the altered area. When the cost of providing the path of travel is an *unreasonable hardship*, that is it exceeds 20% of the project's total cost, the access improvements can be limited to that which can be accomplished for that amount (i.e. 20% of the total cost). However, under California law, the path of travel improvements on large projects cannot be capped based on an unreasonable hardship. A large project is one where the cost exceeds an annually adjusted index, or where a series of projects over a three-year period cost more than that threshold.

**2. Architectural Barriers Under The ADA**

Since 1990, the Americans with Disabilities Act, at section 42 USC 12182 (b)(2)(A)(iv) has required that features that do not meet the standards for access (ADAAG), are barriers and must be corrected. This obligation applies to existing facilities regardless of the age of the building or whether any construction or alterations have been done, although special allowances may apply to truly historic buildings. The extent to which the obligation applies is limited to tasks that are "readily achievable".

There is no formulaic definition of what meets the standard of "readily achievable". It is determined in part on the "overall financial resources" of the responsible parties. It is beyond the scope of this assignment to make such a determination at this time.

*ADA Title III Sec.36.201*

*(b) Landlord and tenant responsibilities. Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part. As between the parties, allocation of responsibility for complying with the obligations of this part may be determined by lease or other contract.*

Under the ADA an access barrier is "readily achievable" if the removal is "easily accomplishable and able to be carried out without much difficulty or expense." Factors to be considered when determining whether removing a barrier is "readily achievable" are set out in the ADA §301 (9) [42 USC 12181], which states:

*(9) READILY ACHIEVABLE- The term `readily achievable' means easily accomplishable and able to be carried out without much difficulty or expense. In determining whether an action is readily achievable, factors to be considered include--*

*(A) the nature and cost of the action needed under this Act;*

*(B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;*

*(C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and*

*(D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.*

## PART III: SUMMARY OF INACCESSIBLE CONDITIONS

### PARKING

Approximately 15 total parking spaces are provided in the lot adjacent to the restaurant, a few of which are reserved exclusively for customers of China Chef. None of the spaces in the lot are reserved for persons with disabilities.

### ACCESS TO THE PUBLIC ENTRANCE:

Change of level: Entering the normal public entrance to the restaurant, from the sidewalk on El Camino Real, requires traveling up two steps, and there is no available accessible alternative. Note: A second building entrance at the back of the restaurant, which opens into a storage area of the restaurant, is equally inaccessible. It requires traveling down two steps from the exterior to the interior floor level.

Door Operation: Each leaf of the paired entry doors of the public entrance yields only a 27-1/2" wide opening, where a minimum 32-inch wide opening is required by at least one door. One of the doors is fixed and the other is operable. The active door requires 11lb.s of force to open, where maximum 5lb. is allowed, and it closes in 1.4 seconds where the minimum allowable closing speed is 3 seconds.

### SEATING:

Knee Space: The clear space under each of the four dining area tables, is only 13" deep, where an accessible wheelchair seating space must provide a minimum 19" deep knee space.

### UNISEX RESTROOM

The restroom consists of two rooms. From a hallway, the outer room is entered first. It contains a lavatory. The inner room contains the toilet. The restroom appears to be the result of a makeshift alteration. Because government offices do not have records concerning this restroom it is yet to be determined when it was actually built and what standards were applicable when it was built, or even if the work was done with a building permit. The restroom was not built to be accessible in any way; some of the profound barriers to access include, but are not limited to the following:

Door From Hallway to Outer Room - Lacks Maneuvering Space And The Doorway Is Too Narrow.
- The door landing is only 34" deep, where a minimum 48" deep landing is required.
- The door width is only 25-1/2", where a minimum 32" wide clear opening is required.

Door From Outer Room to the Toilet Area - Poses a 4-Inch High Step, and The Doorway Is Too Narrow.
- Due to a change of floor level between the inner and outer parts of the restroom, the door threshold is 4" high, where a maximum 1/2-inch change of level is allowable.
- The door opening is only 25-1/2" wide, where a minimum 32" wide clear opening is required.

Maneuvering Space in the Toilet Room Is Too Small.
- The clear floor space is approximately only 42" diameter, where a minimum of 60" diameter is required.

Toilet Fixture Is Too Low And Grab Bars Are Not Provided.
- Toilet seat is 15-1/2" high, where it is required to be 17' to 19" high
- Required grab bars on the walls adjacent to and behind the toilet are not provided at all.

## PART IV: DETAILED INVENTORY OF ARCHITECTURAL BARRIERS

The following Inventory of Barriers lists the features that do not meet the regulatory standards for disabled access, as stated in one or more of the following:

CBC: CA Building Code (Title 24 Part 2 – Volume 1)
ADAAG: The Americans with Disabilities Act (Title III – 28 CFR Part 36, Appendix A)
ANSI A117.1 – 1961 The American National Standard Institute
ADA: Title III of the Americans with Disabilities Act pertaining to places of public accommodation.

**LEGEND**

For efficiency purposes, this section employs the use of abbreviations as follows:

ADAAG = Americans with Disabilities Act Accessibility Guidelines
AFF = Above Finish Floor
CBC = California Building Code
CL = Centerline
ISA = International Symbol of Accessibility
POT = Path of Travel
PROW = Public Right of Way
Title 24/CBC = California Title 24 Accessibility Standards

Referenced photos are numbered and located at the back of the report.

| # | Barrier Description | Code Requirement | Code Ref. | Recommendation | Photo |
|---|---|---|---|---|---|
| **1.0** | **PARKING** | | | | |
| 1.1 | Quantity:<br>Approximately 15 total parking spaces are provided in the lot adjacent to the restaurant, a few of which are reserved exclusively for customers of China Chef. None of the spaces in the lot are reserved for persons with disabilities. | Non-Medical Facility<br>1–25 ____ 1 *****<br>26–50 ____ 2<br>51–75 ____ 3<br>76–100 ____ 4<br>101–150 ____ 5<br>151–200 ____ 6<br>201–300 ____ 7<br>301–400 ____ 8 | ADAAG<br>*4.1.2(5)(a)* | Provide one accessible parking space with an 8-ft wide access aisle adjacent to the passenger's side of the vehicle, and install required signage. | 1-1 |

| # | Barrier Description | Code Requirement | Code Ref. | Recommendation | Photo |
|---|---|---|---|---|---|
| **2.0** | **PUBLIC ENTRANCE** | | | | |
| 2.1 | Change of level: Entering the normal public entrance to the restaurant from the sidewalk on El Camino Real, requires traveling up two steps and there is no available accessible alternative | Changes in level greater than 1/2 in must be accomplished by means of an accessible ramp | ADAAG 4.5.2 | Perform Option A or B, however, if both of those options are proved to be legally or structurally infeasible, perform Option C.<br><br>**A) EXTERIOR RAMP at the FRONT ENTRY:** Install an exterior ramp as shown in Drawing A. The ramp would provide an accessible route directly up to the public entrance from the public sidewalk; This solution would require a sidewalk encroachment permit from CA Dept. of Transportation (CalTrans)<br><br>**B) EXTERIOR RAMP At the BACK ENTRY:** If a sidewalk encroachment permit cannot be acquired per Option-A, install a walkway along the side of the building that would lead to the back entry door, as shown in Drawing B. The restaurant floor-level is down two steps and is lower than the exterior grade at the area of the back door. This solution would require lowering the back door to the same level as the restaurant floor, and excavating the exterior grade around that door to provide an accessible path to it.<br><br>**C) INTERIOR WHEELCHAIR LIFT:** If it can be demonstrated that neither A, nor B are feasible, install a wheelchair lift (or a ramp) that would lead down to the restaurant's floor level from the back entry door, as shown in Drawing C. | Front Side<br>2-1a<br><br>Back Side<br>2-1b<br>2-1c |

| # | Barrier Description | Code Requirement | Code Ref. | Recommendation | Photo |
|---|---|---|---|---|---|
| 2.2 | Door Size:<br>Each leaf of the paired entry doors of the public entrance yields only a 27-1/2" wide opening | Where a pair of doors is used, at least one of the doors must provide a clear, unobstructed opening width of 32 inches with the leaf opened 90-degrees | ADAAG 4.13.4 | Make the front entry door accessible, by replacing the paired doors with a single 3-ft wide door, or by installing a powered door opener that opens both doors simultaneously.<br><br>*Note: Widen the front door door only if Option-A as described at item 2.1 is performed. Otherwise, if Option B or C are performed, provide directional signage at the front entrance to the back entry door that would be made accessible under Options B or C.* | 2-2 |
| 2.3 | Door Operation:<br><br>1) The active door requires 11lb:s of force to open.<br><br>2) The active door closes in 1.4 seconds. | 1) Maximum effort to operate exterior and interior doors may not exceed 5-lb.<br><br>2) Doors with closers may not close faster than 3 second from an open position of 70 degrees to a point 3-inch from the latch | CBC 1133B.2.5<br><br>ADAAG 4.13.10 | Adjust or replace the door closer as needed to produce max. 5lb. door pressure and minimum 3-second closing time. | No Photo |
| **3.0** | **SEATING** | | | | |
| 3.1 | Knee Space: The four dining tables provide kneespace under the table that is only 13" deep. | A minimum of 19" deep space under the table required for wheelchair users<br><br>Each dining, banquet and bar area shall have one wheelchair seating space for each 20 seats, with at least one minimum wheelchair seating space per functional area and shall comply with Section 1122B, "Fixed or Built–In Seating, Tables, and Counters<br><br>Wheelchair seating shall be on an accessible route, have a surface that is 28" to 34" high, and provide accessible kneespace under the counter or tabletop, yielding:<br>30" min. width<br>27" min. height<br>19" min. depth *** | CBC 1104B.5(4)<br><br>CBC 1122B | Replace one table with either Option A or Option B listed below.<br><br>A) 36" square tabletop with 4 legs that are located in the corners in order to insure a minimum 30" wide wheelchair seating space.<br><br>B) 42" diameter, round tabletop with a max. 4" diameter support post in the center of the table. | No Photo |

| # | Barrier Description | Code Requirement | Code Ref. | Recommendation | Photo |
|---|---|---|---|---|---|
| 4.0 | **UNISEX RESTROOM** The restroom consists of two rooms. From a hallway, the outer room is entered first. It contains a lavatory and an inner room contains the toilet. | | | | |
| 4.1 | Signage: Tactile signage and a geometric symbol are not displayed. | Signage that displays raised letters, Braille, and a 12" equilateral triangular symbol is required<br><br>Tactile: Numbered rooms, restrooms, and exits must display tactile signage (i.e. Raised characters and Braille) on the wall beside the latching edge of the door, centered at 60" AFF<br><br>Geometric: Doorways leading to men's sanitary facilities shall be identified by an equilateral triangle ¼" thick with edges 12" long and a vertex pointing upward | ADAAG 4.1.3(16)(a)<br><br>CBC 1115B.5 | **APPLICABLE TO ITEMS 4.1 TO 4.9:** *Provide an accessible toilet room per solutions in Drawing-D, or by performing different, but equivalent measures.*<br><br>Install required signage | 4-1 |
| 4.2 | Door - Hallway to Outer Room<br>Door Landing:<br><br>Landing is only 34" deep | Minimum 48" deep landing is required on the side toward which a door swings | ADAAG 4.13.6 | Widen this hallway or provide access through a differently designed space | 4-2 |
| 4.3 | Door - Hallway to Outer Room<br>Door Width<br><br>The clear opening of the door is only 25-1/2" wide. | When a door is open 90 degrees, there must be a clear opening width at least 32 inches wide, measured between the face of the door and the door jamb on the opposite side | ADAAG 4.13.5 | Widen this door or provide access through a differently designed space | See photo at 4.2 |
| 4.4 | Lavatory: A cabinet under the lavatory blocks all possible knee space for wheelchair-users. | Accessible lavatories shall provide a vertical clearance of 29" measured from the floor to the bottom of the apron or to the outside bottom edge of the lavatory.. Knee clearance below the lavatory shall extend a minimum of 30" in width by 17" in depth. | ADAAG 4.19.2 | Install a lavatory that provides accessible knee space under the fixture. | 4-4 |
| 4.5 | Door - Outer room to Toilet room<br>Change of Floor Level<br><br>4" high step at the door threshold | The floor or landing may not be more than 1/2 inch lower than the threshold of the doorway. | ADAAG 4.13.8 | Provide a no-step route to the toilet. | 4-5a<br>4-5b |
| 4.6 | Door - Outer room to Toilet room<br>Door Width<br><br>The clear opening of the door is only 25-1/2" wide. | When a door is open 90 degrees, there must be a clear opening width at least 32 inches wide, measured between the face of the door and the door jamb on the opposite side | ADAAG 4.13.5 | Widen this door or provide access through a differently designed space | 4-6 |

| # | Barrier Description | Code Requirement | Code Ref. | Recommendation | Photo |
|---|---|---|---|---|---|
| 4.7 | Maneuvering Space in Toilet Room<br><br>The clear space for turning around 180-degrees, is approximately 42" diameter, less that the length of a wheelchair. | An unobstructed turning space complying with 4.2.3 shall be provided within an accessible toilet room.<br><br>ADAAG 4.2.3 requires a minimum 60" diameter clear turning space per Figure 3a, or a 60' x 60' T-Shaped space per Figure 3b. | ADAAG 4.22.3<br><br>ADAAG 4.2.3 | Expand this toilet room or provide an accessible turning area through a differently designed space | 4-7 |
| 4.8 | Toilet Height<br><br>The toilet seat is 15-1/2" above the floor | The height of an accessible toilet shall be a minimum of 17" and a maximum of 19" measured to the top of the toilet seat. Seats shall not be spring to return to a lifted position. | 4.16.3 | Replace the toilet with an accessible fixture. | 4-8 |
| 4.9 | Grab Bars<br><br>No grab bars are provided. | A 42" minimum length grab bar is required to the side of the water closet spaced 12" maximum from the back wall and extending a minimum of 54" from the back wall at a height between 33" and 36". A second grab bar is required on the wall behind the toilet. It must be minimum 36" long. | Fib. 29 & 30 | Install grab bars as required. | 4-9 |

# PART V: RECOMMENDATIONS

## PARKING

1.1 Provide one accessible parking space with an 8-ft wide access aisle adjacent to the passenger's side of the vehicle. Install all required signage.

## PUBLIC ENTRANCE

2.1 Perform Option A or B, however, if both of those options are proved to be legally or structurally infeasible, perform Option C.

Option A) EXTERIOR RAMP at the FRONT ENTRY: Install an exterior ramp as shown in **Drawing A**. The ramp would provide an accessible route directly up to the public entrance from the public sidewalk; This solution would require a sidewalk encroachment permit from CA Dept. of Transportation (CalTrans)

Option B) INTERIOR RAMP at the BACK ENTRY: If a sidewalk encroachment permit cannot be acquired per Option-A, install a walkway along the side of the building that would lead to the back entry door, as shown in **Drawing B**. The restaurant floor-level is down two steps and lower than the exterior grade at the area of the back door. This solution would require lowering the back door to the same level as the restaurant floor, and excavating the exterior grade around that door to provide an accessible path to it.

Option C) INTERIOR RAMP OR WHEELCHAIR LIFT: If it can be demonstrated that neither A, nor B are feasible, install a wheelchair lift or a ramp that would lead down to the restaurant's floor level from the back entry door, as shown in **Drawing C**.

2.2 Make the front entry door accessible, by replacing the paired doors with a single 3-ft wide door, or by installing a powered door opener that opens both doors simultaneously. *Note: Make the front door accessible only if Option-A as described at item 2.1 is performed. Otherwise, if Option B or C is performed, provide directional signage to the newly accessible back entry door*

2.3 Adjust or replace the door closer as needed to produce max. 5lb. door pressure and minimum 3-second closing time.

## SEATING

3.1 Replace one table with either Option A or Option B listed below.

Option A) 36" square tabletop with 4 legs located in the corners to insure a minimum 30" wide wheelchair seating space.

Option B) 42" diameter, round tabletop with a maximum 4" diameter support post in the center of the table.

## RESTROOM

Perform items 4.1 to 4.9 in conjunction with the recommendation in Drawing-D, or by performing different, but equivalent measures.

4.1 Install required signage
4.2 Widen this hallway or provide access through a differently designed space
4.3 Widen this door or provide access through a differently designed space
4.4 Install a lavatory that provides accessible knee space under the fixture.
4.5 Provide a no-step route to the toilet.
4.6 Widen this door or provide access through a differently designed space
4.7 Expand this toilet room or provide an accessible turning area through a differently designed space
4.8 Replace the toilet with an accessible fixture.
4.9 Install grab bars as required.

Drawing-A
EXISTING 2-Step Entry
676 El Camino Real, San Carlos
1114 Cherry St.
9" 11"
Sidewalk
(Current width of unencroached sidewalk) 99"
2 steps down
Planter
El Camino Real
W
S
N
E
676 El Camino Real, San Carlos-CA
PROPOSED Wheelchair Entry Ramp
Recommendation Option-A
Landing
Ramp Down
Stairs Dwn
3' 6"
9' 11"
77" (Width of unencroached sidewalk)
Sidewalk
Driveway
EL CAMINO REAL

Drawing-B
4' 6"
Entry Door
Reversed to swing in, and widened to 3-ft.
Existing Back Entry 2-steps down to restaurant
LNDG
New Landing
Lowered 12-in. to be level with the interior floor
Excavated Walkway
East End: Level with existing parking lot
West End (landing): 12-inch lower than the parking lot, and level with the floor of the restaurant.
Note: Existing grade in the parking lot slopes down from west to east at 5% to 6%. The excavated walkway, if built level, would need to be 16-ft. long One that sloped West to East at 2% for surface drainage would need to be approximately 24-ft. long. One that sloped East to West at 5% (with collector drain at the landing) would only need to be 9-ft long.
24-ft (=/-)
2% Slope Down
Existing Front Entry 2-steps up to restaurant
Parking Lot
W
S
N
E

## Drawing-C



Landing
Level with Doorway

Wheelchair Lift

Stairs
Down to
Interior Floor



Drawing-D

Storage
Hallway
Outer Room
Closet
Inner Room
4" high step up to the inner room.
Kitchen
Dining

New Wall
Wall Removed
Storage
LNDG
Ramp Dwn
NOTES:
Toilet is rotated 180-deg. and continues to use the existing sewer connection
Floor of the "outer room" and of the new landing are raised 4" to match the floor level of the existing toilet room
New 4-ft long ramp provides accessible route down to the floor of the storage room from the raised landing
Kitchen
Dining



Steve Mincey

CHERRY ST.
CHINA CHEF RESTAURANT AND HAIR HUNTERS
51'-6"±
THIS IS 12" BELOW EXISTING PAVEMENT ELEVATION
6'-0"
27'-6"±
18'-0"
3'-0"
24'-0"
5'-0"
5'-0"±
2%
EXISTING BLDG.
9'-0" MIN.
8'-0" MIN.
17'-0"
11'-0"
EL CAMINO
* Put "Tow-Away" sign at parking space instead of at driveway entry
* paint "NO PARKING" w/ 12" highlettes in access aisle
SCALE: 1" = 20'-0"
0 5' 10' 20' 40'

Mar 04, 2008 – 4:15pm mkimball T:\mkimball\A1.dwg

DES ARCHITECTS ENGINEERS

399 Bradford Street
Redwood City, Ca. 94063
Tel: 650.364.6453
Fax: 650.364.2618
www.des-ae.com
© 2008

CHINA CHEF RESTAURANT SITE PLAN

HARTNETT

| | | | |
|---|---|---|---|
| ISSUE DATE: 03/03/08 | REFERENCE: | | |
| DRAWN BY: M. KIMBALL | SHEET NO: A1 | | |
| REVIEWED BY: S. MINCEY | | | |
| PROJECT NO.: 9737.001 | REF. SHEET: | | |

## LEGEND:

– – – – – – – – LIMIT OF WORK

## KEY NOTES:

### DEMOLITION ITEMS:

(D1) REMOVE (3) BOLLARDS

(D2) SAWCUT AND REMOVE EXISTING PAVEMENT IN AREA OF NEW WALKWAY

### BUILDING ITEMS:

(B1) SAW CUT CONCRETE WALL TO CREATE LARGE OPENING FOR 3' WIDE DOOR AND FRAME

(B2) INSTALL NEW DOOR WITH INWARD SWING THAT MEETS ALL ADA REQUIREMENTS (AND TITLE-24)

(B3) INSTALL NEW THRESHOLD THAT MEETS ALL ADA REQUIREMENTS — (C& TITLE 24)

### SITE IMPROVEMENT ITEMS:

(1) INSTALL ACCESSIBLE AC PAVEMENT SIDEWALK. 2% MAX. SLOPE IN ANY DIRECTION.

(2) INSTALL CONCRETE RETAINING WALL/CURB PER ATTACHED

(3) PAINT ACCESSIBLE PARKING SYMBOL PER ATTACHED

(4) PAINT 4" WIDE WHITE STRIPES AT 3' O.C. FOR 5' WIDE ACCESSIBLE PATHWAY

(5) GRIND AND FEATHER ADDING NEW AC PAVEMENT AS REQUIRED AT 2% IN ALL ACCESSIBLE SPACE, ETC. IN NON-ACCESSIBLE SPACES, OVERLAY NEW AC PAVEMENT AS REQUIRED TO CONFORM TO (E) PAVEMENT PER ATTACHED

(6) VAN ACCESSIBLE SIGN PER ATTACHED

(7) RELOCATE BOLLARD TO THIS LOCATION

(8) ADD STRIPING FOR DRIVEWAY

(9) REMOVE LANDSCAPE AREA AND REPLACE WITH 2" AC PAVING OVER 9" CL. 2 AGG. BASE

(10) SAWCUT AND REMOVE SIDEWALK AND REPLACE WITH DRIVEWAY AND GUTTER PER CITY STDS (DRILL & EPOXY 1/2" DIAMETER DOWELS 6" INTO EXISTING CONC. AT 12" O.C.

Mar 04, 2008 – 4:19pm mkimball F:\mkimball\A1.dwg

| DES ARCHITECTS ENGINEERS | 399 Bradford Street, Redwood City, Ca. 94063, Tel: 650.364.6453, Fax: 650.364.2618, www.des-ae.com © 2008 | CHINA CHEF RESTAURANT SITE PLAN / HARTNETT | ISSUE DATE: 03/03/08 | REFERENCE: |
|---|---|---|---|---|
| | | | DRAWN BY: M. KIMBALL | SHEET NO: A2 |
| | | | REVIEWED BY: S. MINCEY | |
| | | | PROJECT NO: 9737.001 | REF. SHEET: |



6"
R=1"
3"
6"
"H"
MAX. 12"
EQ.
"D"="H"
MIN. 6"
EQ.
3"
NEW 2" AC PAVEMENT OVER 6" CL. 2 AGG. BASE ROCK COMPACTED TO A MIN. OF 95% IN ACCORDANCE WITH ASTM TEST D1557.
#4 @ 12" O.C. EACH WAY

NOTES:

1. CONCRETE TO BE CLASS A, 6 SACK, 3000 PSI.
2. PROVIDE EXPANSION JOINTS
3. ALL RADII TO BE TOOLED.
4. BASEROCK TO BE COMPACTED TO A MIN. OF 95% PER ASTM D1557

# DEEPENED CURB

SCALE: 1 1/2"=1'-0" (8)

FILE NAME: DEEPCURB DRAWN BY: MASTER

mkimball T:\mkimball\A1.dwg

Mar 04, 2008 - 4:15pm

DES ARCHITECTS ENGINEERS

399 Bradford Street
Redwood City, Ca. 94063
Tel: 650.364.6453
Fax: 650.364.2618
www.des-ae.com

© 2006

| SITE DETAIL | ISSUE DATE: 03/03/08 | REFERENCE: |
|---|---|---|
| | DRAWN BY: M. KIMBALL | SHEET NO.: |
| HARTNETT | REVIEWED BY: S. MINCEY | |
| | PROJECT NO.: 9737.001 | REF. SHEET: |



FOG SEAL COAT
TACK COAT
2". ASPHALT CONCRETE
9" CLASS 2 AGGREGATE BASE ROCK COMPACTED TO A MINIMUM OF 95% IN ACCORDANCE WITH ASTM TEST D1557
SUBGRADE TO BE COMPACTED TO A MINIMUM OF 95% IN FIRST SIX INCHES IN ACCORDANCE WITH ASTM TEST 1557

## AC PAVEMENT SECTION

SCALE: N.T.S. (8) FILE NAME: ASHPAVE DRAWN BY: MASTER

Mar 04, 2008 – 4:10pm mkimball T:\mkimball\A1.dwg

DES ARCHITECTS ENGINEERS

399 Bradford Street
Redwood City, Ca. 94063
Tel: 650.364.6453
Fax: 650.364.2618
www.des-ae.com

© 2008

| SITE DETAIL | ISSUE DATE: 03/03/08 | REFERENCE: |
|---|---|---|
| | DRAWN BY: M. KIMBALL | SHEET NO: |
| HARTNETT | REVIEWED BY: S. MINCEY | |
| | PROJECT NO: 9737.D01 | REF. SHEET: |



FACE OF CONCRETE CURB
3'-0"
6" RADIUS TYP.
2 1/2" RADIUS
45°
28
1 1/2"
3"
5
1'-0"
13"
10" RADIUS
1 1/2"
6"
3'-0"
18'-0" (N.T.S.)
BLUE BACKGROUND EQUAL TO COLOR NO. 15090 IN FEDERAL STANDARD 595a.
2" WIDE WHITE THERMOPLASTIC STRIPING TYP.
13"
13"
℄ PARKING STALL

## ACCESSIBLE PARKING SYMBOLS

SCALE=N.T.S. (16) FILE NAME: ACCSYM DRAWN BY: MASTER

Nor 04, 2008 – 4:10pm mkimball I:\mkimball\A1.dwg

DES ARCHITECTS ENGINEERS

399 Bradford Street
Redwood City, Ca. 94063
Tel: 650.364.6453
Fax: 650.364.2618
www.des-ae.com

© 2008

| SITE DETAIL | ISSUE DATE: 03/03/08 | REFERENCE: |
|---|---|---|
| | DRAWN BY: M. KIMBALL | SHEET NO.: |
| HARTNETT | REVIEWED BY: S. MINCEY | |
| | PROJECT NO.: 9737.001 | REF. SHEET: |

NOTES:

1. OFF-STREET PARKING FACILITIES TO HAVE SIGN AT STREET ENTRANCE NOT LESS THAN 17" x 22" IN SIZE. SIGN TEXT TO BE BEADED (OR EQUAL) TO STATE THE FOLLOWING:
   "UNAUTHORIZED VEHICLES NOT DISPLAYING DISTINGUISHING PLACARD OR LICENSE PLATE ISSUED FOR PERSONS WITH DISABILITIES MAY BE TOWED AWAY AT OWNER'S EXPENSE. TOWED VEHICLES MAY BE RECLAIMED BY CALLING. ______ ______"
   CONTRACTOR TO FILL IN BLANKS PRIOR TO MANUFACTURING SIGN.
2. DISABLED ACCESSIBLE PARKING SPACE SIGN TO BE BEADED (OR EQUAL) WITH INTERNATIONAL SYMBOL OF ACCESS, AS SHOWN. SIZE TO BE 70 SQ. IN. MINIMUM.
3. PROVIDE SIGN AT VAN STALL WITH ADD'L SIGN STATING "VAN ACCESSIBLE"

ACCESS SIGN (TWO SIGN TYPES, SEE NOTES)
SIGN TYPE 2 FREE STANDING SIGN
SIGN TYPE 1 TO HAVE TEXT IN THIS AREA (NO SYMBOL)
VAN ACCESSIBLE
80" MIN.
SEE NOTE 3
2 1/2" DIA. GALV. PIPE
FINISH GRADE
10" DIA. x 24" DP. CONC. FOOTING STOP PIPE 3" CLR. FROM FOOTING BOTTOM

NOTE:
80" HIGH AT STALL AND ENTRANCE
48" AT STALLS
(AT LANDSCAPE OR NON PEDESTRIAN AREAS AWAY FROM PATH OF TRAVEL)

## ACCESSIBLE PARKING SIGNS

SCALE: N.T.S. (1)

Mar 04, 2008 - 4:10pm rakimball T:\rakimball\A1.dwg

DES ARCHITECTS ENGINEERS
399 Bradford Street
Redwood City, Ca. 94063
Tel: 650.364.6453
Fax: 650.364.2618
www.des-ae.com
© 2008

| SITE DETAIL | ISSUE DATE: 03/03/08 | REFERENCE: |
|---|---|---|
| | DRAWN BY: M. KIMBALL | SHEET NO: |
| HARTNETT | REVIEWED BY: S. MINCEY | |
| | PROJECT NO: 9737.001 | REF. SHEET: |



PROP. FIN.GRADE OF NEW A.C. OVERLAY.
MIN AC DEPTH: 2-1/2"
CONFORM POINT.
(E) TOP OF AC.
2" MIN.
GRIND OUT WEDGE OF (E) ASPHALT TO ACCOMODATE NEW AC PAVEMENT.
VARIES - FIELD DETERMINE

## WEDGE CUT AT CONFORM

SCALE: N.T.S. (8) FILE NAME: AC-CONF DRAWN BY: MASTER

Mar 04, 2008 - 4:10pm mkimball T:\mkimball\A1.dwg

DES ARCHITECTS ENGINEERS

399 Bradford Street
Redwood City, Ca. 94063
Tel: 650.364.6453
Fax: 650.364.2618
www.des-ae.com

© 2008

SITE DETAIL

HARTNETT

| ISSUE DATE: 03/03/08 | REFERENCE: |
| --- | --- |
| DRAWN BY: M. KIMBALL | SHEET NO: |
| REVIEWED BY: S. MINCEY | |
| PROJECT NO: 9737.001 | REF. SHEET: |

TC (6" CURB)
F.F. 100.0
F.F. 99.0
6%
(E)
2% (P)
(E) 98.56
P(98.48)
E(98.44)
P(98.52)
PROFILE
24'-0"
(E) BLDG
B
B
C
C
A
A
WM
WM
WM
WM
6'-0"
PLAN
SCALE: 1" = 3' V
1" = 3' H

22-141 50 SHEETS
22-142 100 SHEETS
22-144 200 SHEETS

6'-0"

BLDG

WM

(E)

(P)

~5"

NEW 2" AC OVER 6" CL. 2 AGG. BASE COMPACTED 95%

CONC. CURB

(E)

BB SECTION

6'-0"

BLDG

(E)

(P)

2"

NEW 2" AC OVER 6" CL. 2 AGG. BASE COMP. 95%

6" CURB

(E)

CONC. CURB

AA SECTION

BLDG.

(E)=(P)

(E)

CC SECTION

SCALE: V 1" = 3'
H 1" = 3'